**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                     CRIMINAL ACTION NO. 2:12-cr-00221

MICHAEL L. WHITE,

               Defendant.

**MEMORANDUM OPINION AND ORDER**

On May 10, 2013, a jury found Defendant Michael L. White guilty of conspiring to commit arson and mail fraud in violation of 18 U.S.C. § 371, aiding and abetting arson in violation of 18 U.S.C. §§ 844(i) and (2), and being an accessory after the fact in violation of 18 U.S.C. § 3. Now pending is Defendant's motion for a new trial filed on May 24, 2013 [ECF 118]. The Government filed its response on June 7, 2013. For the reasons that follow, the motion is **DENIED**.

## I.    BACKGROUND

In 1995, Defendant purchased a two-unit residential property located on Route 85 near Van, West Virginia (the "Van Duplex"). It proved to be an unprofitable investment. Defendant leased the Van Duplex's apartments but struggled to collect rent and make minimal repairs. By the summer of 2009, he had not received rent from either of his two tenants in over a year. He brought an eviction action against them on September 11, 2009. He dismissed the action against Christy Smith (formerly Hager), the tenant who had occupied Apartment One, after learning that

she had already moved out.   The remaining tenant, Shannon Dickens, was ordered to vacate the premises by midnight on October 15, 2009.   Ms. Dickens left by early October, leaving the building vacant.   The Van Duplex was damaged by a fire of suspicious origins in the early morning hours of October 16, 2009.   The Government alleged that Defendant arranged to have the Van Duplex burned to collect an $80,000 payout in insurance proceeds.

The Government's case-in-chief was largely dependent on the testimony of Kimberly Kinder, Defendant's former housemaid and sex partner.   At trial, Ms. Kinder testified that Defendant came to her home during the summer of 2009 and asked her and her now-deceased husband, Doug Kinder, to set fire to the Van Duplex, promising them $4,000 in return.   Ms. Kinder and her husband eventually agreed.   After being twice thwarted in their attempt to burn the property by finding it still occupied, the Kinders discovered the Van Duplex empty at around midnight on October 16, 2009.   Doug Kinder snuck inside Apartment One through an unlocked door and, after unsuccessfully trying to ignite a pile of damp clothing, started a fire that burned the building beyond repair.   Defendant would later deny knowing who lit the fire during separate interviews with Nationwide Insurance Company ("Nationwide") agents, speculating that perhaps one of his evicted tenants was responsible.   On November 12, 2009, Defendant received a check for $80,716.51 from Nationwide as compensation for his loss.

## II.     LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."   Fed. R. Crim. P. 33(a).   The trial court is not required to view the evidence in the light most favorable to the Government, and it may assess the credibility of witnesses as it sees fit. *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985).

2

However, the court should exercise its discretion to grant a new trial sparingly, and should do so "only when the evidence weighs heavily against the verdict."   *Id.* at 1486.

### III.   ANALYSIS

Defendant's motion identifies a number of asserted errors in the Court's jury charge and evidentiary rulings.   The Court addresses each claim of error in turn.

### A.   *Interstate Commerce Instruction*

Counts One and Two of the Indictment charge arson as an object of the conspiracy and as a substantive offense, respectively.   The offense of arson requires proof that the building burned was "used in or affecting interstate commerce."   18 U.S.C. § 844(i).   Relying on *Jones v. United States*, 529 U.S. 848 (2000), Defendant contends that the Court's explanation of this element in its jury charge misstated the law.   Defendant argues that under *Jones*, the Van Duplex was not "used in or affecting interstate commerce" at the time the Kinders set it ablaze.   Having reviewed its instruction, the Court is satisfied that Defendant relies on an overly mechanical and ultimately inaccurate interpretation of the *Jones* decision.

The Supreme Court has held that the rental of an apartment building is "unquestionably" an activity that affects interstate commerce.   *Russell v. United States*, 471 U.S. 858, 862 (1985).   Under *Russell*, if a dwelling is "rental property" at the time of the arson, the arsonist's conduct falls within § 844(i).   *Id.*   The Supreme Court's decision in *Jones* does not alter this conclusion.   In *Jones*, the Supreme Court considered whether an owner-occupied private dwelling was used in an activity affecting interstate commerce because it was served by utilities across state lines and financed and insured by out-of-state businesses.   529 U.S. at 856-57.   The Supreme Court found that these activities did not constitute "use" as defined by the arson statute.   *Id.* at 855.   It

3

interpreted the statute to require active employment for commercial purposes, rather than "a passive, passing, or past connection to commerce." *Id.* (citing *Bailey v. United States*, 516 U.S. 137, 143 (1995)).   While the private dwelling at issue in the *Jones* case did not have a sufficient nexus to interstate commerce, the Supreme Court took pains to reiterate is prior holding in *Russell* that a property held out for rent does have such a connection.   *Id.* at 856.

    For that reason, *Jones* is easily distinguishable on its facts.   Rather than a private dwelling without a concrete commercial purpose, the Van Duplex was, at least at one time, actively held out for rent.   The question at issue in this case is one that the *Jones* Court did not address; that is, whether a rental property ceases to be actively used in interstate commerce because it is vacant at the time the arsonist strikes the match.   Under Defendant's interpretation of *Jones*, the Van Duplex moved beyond the reach of § 844(i) when his last tenant vacated the property approximately two weeks before the Kinders set it ablaze.   Such a cursory reading of *Jones*' "active use" language would lead to ludicrous results, however, and does not square with Fourth Circuit precedent that is factually on all fours with the case at hand.

    In *United States v. Parsons*, 993 F.2d 38 (4th Cir. 1993), the defendant appealed her arson conviction, arguing that her burned rental property was not used in an activity affecting interstate commerce.   The evidence adduced at trial showed that the defendant purchased a single-family house on 30th Street in Charleston, West Virginia and rented it out for approximately three years. She began having trouble with her tenant and instituted eviction proceedings.   On November 21, 1986, her tenant vacated the premises.   In early January, the defendant gave notice to her landlord that she intended to vacate her own apartment on February 1, 1987.   The defendant then recruited another individual to burn the 30th Street house so that she could collect the insurance proceeds.

4

On January 29, 1987—more than two months after her tenant had left—the defendant's accomplice set fire to the house. The Fourth Circuit upheld the defendant's arson conviction under these facts, finding that sufficient evidence supported the jury's conclusion that the 30th Street house was "rental property" at the time of the fire. It identified three salient facts:

> First, the house had been used as rental property for two to three years before the fire. Even though it was vacant at the time of the fire, vacancy alone does not constitute a "removal" from the rental market. . . . Second, at the time of the arson, the 30th Street house was insured as rental property. Third, once the jury concluded that Parsons commissioned the arson (a decision supported by sufficient evidence), it was certainly rational to also conclude that Parsons never intended to move into the house or to remove it from the rental market. Simply put, the jury concluded that she planned to have the house burned and that the . . . notice [to her landlord] was merely a cover.

*Id.* at 41. Importantly, the defendant's demonstrated intent to burn the house did not destroy its connection to interstate commerce.

*Parsons* was decided before *Jones*, but the Fourth Circuit has continued to apply its reasoning post-*Jones* when faced with the question of whether rental property, though vacant at the time of the fire, continues to be "actively used" in interstate commerce so as to satisfy § 844(i). In *United States v. Milligan*, 3 Fed. App'x 169 (4th Cir. 2001) (per curiam), the Fourth Circuit addressed this question in the context of a habeas corpus petition. There, the petitioner challenged his § 844(i) conviction, arguing that in light of the Supreme Court's decision in *Jones*, his vacant, uninhabitable rental property did not qualify as property "used in" interstate commerce when it was damaged by fire. *Id.* at 170. The petitioner had previously leased the building at issue as a private residence, but at the time of the arson it was vacant from a fire ten days earlier. The prosecution produced no evidence that the petitioner intended to repair the building or return it to the rental market. The Fourth Circuit nonetheless upheld the petitioner's conviction, reasoning

that the following evidence supported the conclusion that the building was "rental property" affecting commerce when the arson occurred:

> The record reveals that Milligan moved the tenant out only twelve hours before the first arson attempt, he had rented the unit for years prior to the arson, he planned the crime while the unit was still occupied, and he renewed the insurance the day before the arson attempt, again while it was still occupied by a tenant.   These, and other facts, including Milligan's history of burning that specific property, collecting the insurance, and then re-renting it, strongly support the conclusion that the unit was not a vacant building, but rather was actively being used commercially at the time of the fire.

*Id*.  The Fourth Circuit further concluded that the fact that the petitioner evicted his tenant "in anticipation of and in order to facilitate the arson" was of no moment where he had formed the intent to commit the crime while his tenant occupied the property and moved the tenant "only hours" before the initial arson attempt.   *Id.*

Here, this Court incorporated the Fourth Circuit's guidance by instructing the jury as follows:

> To prevail on Count Two, the Government must establish that the building that is the subject of this case, the Van Duplex, was used in interstate commerce or in an activity that affected interstate commerce.   "Interstate commerce" means commerce which affects more than one state.

> The law considers property that is offered for rent or used as rental property to be "used in interstate commerce" within the meaning of this statute.   The mere intent to burn a building does not automatically prove that it was not used in interstate commerce.   Rather, you may make the determination regarding whether a building was "used in interstate commerce" based on how the property was routinely used immediately before the formation of any plan to burn the building and/or during the execution of any such plan. You may consider whether it was used as a rental property during any part of the life of any scheme or conspiracy to burn the building.    You may also consider evidence of how the property was classified for insurance and property tax purposes in deciding whether the property in question was rental property and, thus, used in interstate commerce within the meaning of the statute.

> Even if the rental property was vacant at the time it was destroyed, it may qualify as

6

a building used in or affecting interstate commerce if the owner intended to return the building to an active commercial or business use or purpose.   A building that is permanently vacant or removed from commercial use for reasons other than an intent to burn it is not a building that is used in or affects interstate commerce.

(ECF 111 at 17.)   In light of the applicable precedent, the Court finds no legal error in its interstate commerce charge.

The Court also finds that the testimony and documentary evidence introduced at trial weigh in favor of the jury's finding that the Van Duplex was "rental property" affecting commerce at the time of the arson. Defendant held out the two apartments for rent for a number of years prior to the fire.  Ms. Dickens testified that she lived in Apartment Two for eight or nine years, and Ms. Stevens resided in Apartment One for at least a year before she began moving out in January 2009. Defendant maintained insurance on the Van Duplex which he had most recently renewed effective July 19, 2009.   (ECF 12.)   The insurance policy identified the property as "tenant occupied."

Like in *Milligan*, Defendant hatched the plan to burn the Van Duplex and solicited the Kinders' assistance while it remained occupied.  Defendant asked the Kinders to join in his scheme during the summer of 2009, but did not file his eviction petitions until September 11 of that year.   At a September 21, 2009 hearing on the eviction petition, Ms. Dickens was ordered to vacate the premises by midnight on October 15, 2009—about two hours before it ultimately burned.   Meanwhile, the Kinders drove by the Van Duplex twice prior to October 15 with the intent to burn it, both times finding Ms. Dickens still there.  Ms. Dickens finally vacated Apartment Two approximately two weeks before the fire.

Though Ms. Smith, the Apartment One tenant, last resided at the Van Duplex in January 2009, she had left many of her personal belongings behind and had been gradually returning to retrieve them in the months prior to the arson.  Some of these items, including furniture and

7

clothing, remained in Apartment One at the time of the fire and were used by the Kinders as kindling.  Ms. Smith learned of the damage to her apartment only upon returning to the Van Duplex to collect the things she had left behind.

These facts provide ample support for the jury's conclusion that the Van Duplex rental property in active commercial use at the time of the fire.  The Court therefore declines Defendant's invitation to overturn his arson conviction for lack of an interstate commerce nexus.

B.     *Conspiracy Instruction*

Defendant claims that the Court "erred by instructing the jury about a conspiracy which was different than the conspiracy charged and prosecuted by the United States in Count One." (ECF 118 at 1.)   The challenged jury charge reads:

> One may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators.  So, if the defendant, with an understanding of the unlawful character of a plan, knowingly and willfully joined in an unlawful scheme on one occasion, that is sufficient to convict him for conspiracy even though he had not participated at other stages in the scheme and even though he played only a minor part in the conspiracy.
>
> To act or participate knowingly means to act or participate voluntarily and intentionally and not because of mistake, or accident, or other innocent reason.   If a defendant or any other person, with understanding of the unlawful character of a plan, knowingly and intentionally encourages, advises or assists, for the purpose of furthering the undertaking or scheme, he thereby becomes a knowing and willful participant—a conspirator.  One who knowingly joins an existing conspiracy is charged with the same responsibility as if he had been one of the originators or instigators of the conspiracy.

(ECF 111 at 15-16.)   While the Indictment alleges that Defendant was the instigator of the conspiracy, Defendant believes that the above-quoted jury charge permitted the jury to find that he joined the conspiracy at a later date, presumably after Doug and Kimberly Kinder independently formed a plan to burn the Van Duplex.  Having reviewed this charge, the Court finds that it

8

contains an accurate statement of the law and did not permit the jury to convict under any theory of conspiracy that differed from that charged in the Indictment.   Because the Indictment alleges that Defendant left the execution of the arson to the Kinders, this charge appropriately instructed the jury that Defendant need not have dictated the minutiae of the scheme or participated in burning the building to be convicted of conspiracy.

C.      *Accessory After the Fact Instruction*

Defendant contends that the evidence was insufficient to convict on the accessory after the fact charge.   The evidence relevant to this charge is as follows.   On February 17, 2010, Defendant was interviewed by Nationwide claims investigator Steve Thompson about an unrelated fire.[1]   During that interview, Mr. Thompson asked Defendant about other recent insurance claims for fire damage.   Defendant mentioned the Van Duplex fire, but opined that one of his evicted tenants was to blame.   He did not mention the Kinders.

Defendant claims that this evidence fails to show an intent on his part "to hinder or prevent [Ms. Kinder's] apprehension, trial or punishment."   18 U.S.C. § 3.   Defendant took the position during trial that an accessory after the fact charge requires proof that the accused communicated directly with law enforcement while attempting to hinder another's apprehension.   Defendant cites no authority in support of this argument; indeed, the statutory language and interpreting case law belie it.   To sustain a conviction under 18 U.S.C. § 3, the prosecution must prove "(1) the commission of an underlying offense against the United States; (2) the defendant's knowledge of

---

[1] This interview was conducted after Defendant submitted an insurance claim for a fire that damaged his home on February 14, 2010.   Defendant claimed that his dog knocked over a candle, igniting a couch.   This Court granted Defendant's motion *in limine* to exclude evidence of this fire, and Mr. Thompson did not testify at trial about the reason for his February 17, 2010 interview.

that offense; and (3) assistance by the defendant in order to prevent the apprehension, trial, or punishment of the offender." *United States v. De La Rosa*, 171 F.3d 215, 221 (5th Cir. 1999).

The evidence at trial demonstrated that Defendant knew that Ms. Kinder had participated in the arson and that despite his knowledge, he concealed her involvement during Mr. Thompson's interview.[2] Because Ms. Kinder's prosecution could lead to his own, it was in Defendant's interest to obfuscate the circumstances surrounding the fire. The evidence also established that if Defendant had divulged the fire's true origins, Mr. Thompson would have reported the information to Nationwide's investigative division which would have, in turn, passed the information along to law enforcement.

D.    *Evidentiary Rulings*

With respect to the Court's evidentiary rulings, Defendant claims that the Court erred in (1) excluding the testimony of defense witness Becky McCloud on hearsay grounds, (2) precluding defense witness Mark Vincent from mentioning that he became familiar with Ms. Kinder while she was employed as an exotic dancer at a strip club that he managed, (3) excluding the admission of Ms. Kinder's redacted psychiatric records, and (4) allowing West Virginia State Police Captain Timothy Bledsoe to testify on rebuttal about the meaning of Defendant's "body language" during an investigative interview.

---

[2] Knowledge of Ms. Kinder's involvement in the arson can be attributed to Defendant for at least three reasons. First, Ms. Kinder testified that Defendant personally solicited her assistance in the arson scheme. Second, Defendant's statements captured on a June 16, 2010 recorded call with Ms. Kinder confirmed this testimony. Third, Captain Tim Bledsoe testified that Defendant admitted to him during a November 15, 2010 interview that he knew that Ms. Kinder started the fire. Defendant told Captain Bledsoe that Ms. Kinder confessed her involvement to him two months after the fire, or in December 2009.

Becky McCloud sought to testify that she called Defendant to inform him of the arson and that he reacted in surprise.   In response to the Government's hearsay objection, defense counsel proposed to admit Defendant's statement to Ms. McCloud under the excited utterance exception to the hearsay rule.   This exception permits the admission of "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2).   The Court initially sustained the Government's objection given the current state of the record, but invited defense counsel to lay the foundation necessary to bring the statement within the exception.   He independently chose not to do so:

> MR. CAGLE:   All right, your Honor.   Let me just make the—I want to withdraw this witness, but only after making this.   Her testimony would be that Mike's response was that—that he was surprised and excited, had no indication, reflected no indication of any prior knowledge of any burning of the apartments.
>
> THE COURT:   Well, I'm not—I'm not preventing you from presenting that testimony, but I think you have to have an adequate foundation under the excited utterance exception.
>
> MR. CAGLE:   Well, it's clear it was a phone conversation.   I mean that's—
>
> THE COURT:   That's not a—that's not an adequate foundation.
>
> MR. CAGLE:   Well, I've given you all I can give you and that's my—and that's what I've got to do and that's where it stands.
>
> THE COURT:   I'm not going to spoon feed you.   That's fine.
>
> MR. CAGLE:   Well, all right.

(Rough Trial Tr., May 9, 2013.)   Quite contrary to his contention that the Court excluded Ms. McCloud's testimony, Defendant withdrew this witness himself.   The Court finds no error in its insistence that defense counsel establish the applicability of the excited utterance exception before introducing this testimony.

11

Next, the Court properly precluded Defendant's former son-in-law, Mark Vincent, from testifying that he met Ms. Kinder while she was employed as an exotic dancer at his strip club. Defendant called Mr. Vincent in an attempt to explain the highly incriminating statements he had made during a recorded phone call with Ms. Kinder following the fire.   Mr. Vincent testified that Ms. Kinder had threatened suicide just prior to the recorded call and that he asked Defendant to play along with her hysterics to avoid upsetting her.   Defense counsel sought to elicit testimony about Ms. Kinder's prior employment as a dancer to provide context for her relationship with Mr. Vincent.   The Government objected on grounds of relevance and unfair prejudice.   The Court finds, as it did at trial, that evidence that Ms. Kinder was an ecdysiast had no tendency to make any fact in issue more or less probable.   Fed. R. Evid. 401.   This tawdry bit of evidence served no purpose other than to impermissibly smear Ms. Kinder's reputation.

Third, the Court rejects Defendant's argument that it should have admitted Ms. Kinder's redacted psychiatric records.   After Ms. Kinder divulged an extensive history of mental health problems during her own plea colloquy, the Court permitted Defendant to discover redacted portions of her psychiatric records and to use these records to conduct a limited inquiry into Ms. Kinder's mental health during cross-examination.   At trial, defense counsel relied heavily on these records to structure Ms. Kinder's impeachment, even at times quoting directly from them. Though she lacked personal knowledge of much of the contents of the records, Ms. Kinder freely admitted to a host of mental health problems that included suicidal ideations and auditory hallucinations.   Defendant then implored the Court to admit the psychiatric records as an exhibit.

The Court relied on Federal Rules of Evidence 403 and 608(b) to deny Defendant's request.   Because Ms. Kinder's records were relevant only to impeach her credibility, Rule 608(b)

12

barred their admission.  *See United States v. Turner*, 104 F.3d 217, 221 (8th Cir. 1997) (upholding, under Rule 608(b), the district court's refusal to admit hospital records relevant only to attack a witness's credibility); *United States v. Thomas*, 525 F. Supp.2d 17, 33-34 (D.D.C. 2007) (finding that Rule 608(b) barred the defendant from admitting a psychological evaluation that tended to impeach the credibility of a government witness).

The Court also found the records inadmissible under Rule 403.  After being used to impeach Ms. Kinder's credibility to accurately perceive and recall the events surrounding the Van Duplex fire, the records had no remaining probative value.  Conversely, their admission as an exhibit carried with it a significant risk of confusion of the issues, not to mention the needless presentation of cumulative evidence.  Ms. Kinder's records were not relevant to any material issue to be proven at trial.  Defendant exhausted the evidentiary value of her records during cross-examination, and admitting these records as exhibits for review by the jury would have been an entirely unnecessary intrusion on Ms. Kinder's privacy.   Because they had been heavily redacted, the records also had serious potential to confuse.  The Court therefore stands by its previous ruling.

Fourth, Defendant's objection to Captain Bledsoe's description of his "body language" rests on an inaccurate recollection of the trial testimony.   The Government called Captain Bledsoe during its case-in-chief and again as a rebuttal witness.   During the Government's case-in-chief, Captain Bledsoe testified that he opened an insurance fraud investigation relating to the Van Duplex in June 2010.   He explained that he conducted an interview with Defendant on November 15, 2010 and described, without objection, Defendant's anxious and nervous manner.   Only when the Government elicited this testimony a second time on rebuttal did Defendant object.   Since

13

Captain Bledsoe's description of Defendant's manner was already in the record, any repetition of this testimony would have been purely cumulative.   Furthermore, although the Court overruled Defendant's objection, the Government moved on to another point and Captain Bledsoe never offered his allegedly objectionable testimony.

*IV.     CONCLUSION*

After considering Defendant's varied contentions, the Court finds no reason to exercise its discretion to grant a new trial.   The Court therefore **DENIES** Defendant's motion [ECF 118].

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        October 24, 2013

_____

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

14
